and we'll proceed to hear argument in the next case on the calendar for this morning which is 24-3716 United States of America v. Ryan Adelbert Johnson and we'll hear first from Ms. Brummer. Did I pronounce that correctly? Brummer, but that's okay. Okay. All right. Thank you, Your Honors. May it please the Court, Counsel, I am appointed under the CJA Act to represent Mr. Ryan Adelbert Johnson. I will try to reserve a few minutes and, of course, I'll be watching my own time. As the Court knows, Mr. Johnson was convicted of two counts of assault with a dangerous crime. There was, of course, the plea agreement afterwards. I'm not going to address that, though he had waived his right to appeal on that. It's not part of the briefing, but just to fill in the blanks. There were two issues raised in the briefing. One was that a rational trier of fact could not have found the essential elements, and the second, that the trial court abused its discretion when it denied the motion for a mistrial and the motion for a new trial. Can you address the juror issue first? Yes, sure. I sort of thought maybe that's where the Court might want to go. So on the juror issue, as I was preparing for it and as I was writing the brief, I kind of envisioned a world where maybe there was only the first part of it, where there was the issue where there's the juror note about the sentencing, about a juror having a problem with the sentencing. Well, sending a note from the jury, judges receive this all the time. They got, here's a note from a juror saying, hey, I'm concerned about, you know, punishment or sentencing or whatever. I mean, that's essentially what happened here. I mean, that would benefit the defendant in this case. Sure. How's that prejudice? Well, okay, there's a second part of it, though. If my, if the only thing would have been that note. And I do think the response maybe was a little odd from the Court where it says you're not to consider punishment when the note was specifically about... That's the straight out from the instructions. Well, sure, sure. The question like related to the sentencing, and I know the sentencing and the punishment are the same, like we as attorneys know that, but I thought that maybe there could have been a better way to say it. Actually, that's not even part of the briefing. If that was my only issue, I probably wouldn't have as much to argue. It would probably be 606B. But what happens afterwards? There's this call, actually two calls when I look at the court's order. There's one where it's a call, can I speak to the judge? And in the order, and I don't want to speculate because it's just, it just kind of says what it says. It says the person asked to speak to the judge. It doesn't seem like, it seems like that's sort of it. But then there's the second call where the person is saying, we felt rushed, and can that be used in sentencing? Like we felt like there was this rush to come to a verdict. And can someone let the judge know, basically? It seemed like it was kind of a note to the judge. Now, wouldn't that kind of a comment, you know, if used for, in inquiry into the validity of the verdict, be barred by 606B? I mean, it's a direct comment about the contents of the deliberations and the mental processes of the jurors. I didn't think so. It because I thought, I mean, how is it not? I think the deliberations were too rushed, because it was Friday, and everyone wanted to get out so that they'd finished before the weekend. Because, you know, a lot of people were from the northern part of the state, and it's very far. And how is that not revealing the jury's internal processes and reaching the verdict, which is what the rule bars? So it's not an internal process if they're feeling coerced by what the judge says. And I know that. How is anything that the judge said coercive? What did the judge say? What words the judge said were coerced? Sure. So the judge had said something along the lines of, I'm very confident this will end by Friday. And the judge put that in his order. Hey, I didn't coerce anybody. Look at, you know, this language. I said I'm also say, but we will return on Monday, if necessary. Yes, yes. And but what we have is the call from a juror saying, we thought we needed to be done on Friday, basically, my paraphrasing, of course, the exact language that is in there is in set forth in the judge's order. So we have that on top of it. It's not just with the judge's statements. We have the jury, a juror following up and saying, we felt rushed and that call came in. I want to remember here, but weeks at some later point after the verdict came, it came in after the verdict. And so, I mean, I'm not so sure that's so probative. And again, to Judge Collins's point, I think then we'd get into some 606 problems. But I if we start regulating judges and telling them, I mean, when when we have a jury that's in panel, they come in, judges routinely tell them, hey, I anticipate this case will be done by Friday or I anticipate this case will be done in three days. Are we not going to allow judges to do that kind of signaling to the juror so that they can make plans for their lives there? I mean, I think that's certainly not. No, that that would be outrageous. And I don't think that is this case. This case has a little bit of an odd twist to it, which is not only are the we do have the statements from the court, not only do we have the call from the juror, but we also have it sort of an odd set of circumstances that the people, the jurors had to travel four to five hours and they were put up in a hotel. And I really couldn't find any case law that was similar to that, where you had the jurors coming in and they had to have lodging. Of course, there was case law. I think it was the Green case that talked about the the jurors. But what's your point with that? The travel? I'm not following your point. Sure, sure. So it's just showing that it's something extrinsic that is basically coercing the jurors. It's like a circumstance that is on the jurors that is causing them to behave in a certain way. Enough so that a juror calls and says, we felt rushed. Do you think that there's an issue in sentencing? And I even thought, you know, as I was writing this brief, I'm like the two issues to me, the issue regarding the sufficiency of evidence and the issue regarding the jury are very much tied together. Because this was a case where I almost pictured a I'm a movie buff. I almost pictured a Tarantino movie of this where it's filmed three ways with one person as a shooter, as a second person as a shooter, as the third person as the shooter. Basically, the evidence seems to be pretty equally that any of these people can be the shooters. And and we can see that the juror jury, the driver's probably out driving while simultaneously shooting a long rifle out the back window, probably passed even a Tarantino movie. Potentially, I don't know. Quentin does some pretty amazing things. But even I mean, it still was a possibility. It was a triable case. Certainly there was a rational path by which a jury could have found that Mr. Johnson in the front passenger seat was the shooter as opposed to the teenager in the backseat. I respectfully disagree. To me, if it was and I don't even think to me, I think in the law, it being a rational trier of fact that the rational trier of fact would have had a hard time if this was if the burden of proof was a preponderance of the evidence to determine. And I'll I'll give it to you, Judge. Let's take the driver out of it. So if we take and you're trying to do a preponderance of the evidence, which is in our burden between the teenager and my officer testimony that said that he thought the shooter had braided hair and Mr. Johnson's the only one who fits that. He thought at one point that the view of the shooter was obscured by the front seat, which could only be possible if the person was seated in the front. You had another witness who also said that she saw braided hair. Why isn't that enough to say he was the one? Well, and coupled with the DNA on the grip, coupled with the phone calls, Johnson admitting being the passenger. Yeah, I don't think there's a doubt that he was the passenger. But the DNA, I thought, was a fact that. On the grip on the. Yeah. So it almost reminded me of those cases where you have two people who live in the house and one of them is dead. You're arguing transfer of the right. Get that. But the issue is sufficiency, right? It is. And so the evidence that Judge Collins points out and this, why isn't that enough? Because it does not demonstrate beyond a reasonable doubt that Johnson was the shooter. It demonstrates that maybe he's a shooter. But when you take the standard being a rational trier of fact, that a rational trier of fact cannot make that determination. It's basically flipping a coin. Is it Johnson or is it the teenager? I mean, the bumps could have been the bushy hair. There was the testimony that the officers could not have seen the magazine and the magazine and the end of the gun, I can't remember what it's called. They couldn't have seen that or seen in the scope or the trigger whatever it was. They could not have seen that from where unless the person was in the back seat. And so there was a lot of circumstances where it was. This was a long gun, right? I think it was. I think it would have been hard to be in the back seat with this long gun. The teenager who has no no DNA of of her was found on the gun. Is that correct? No DNA. But there could be masked by the male DNA. So it was not a. This was a triable case because there was a this was a chaotic scene with the shooting and in the chase and all the rest of it. And, you know, people see things and the officer testimony didn't entirely line up either. But the question is, is there a rational path by which the jury could have concluded? We know it's one of the three people can't be the driver between the back passenger and the front passenger. And there were a number of things by which a jury could have said, you know, it's got to be the front passenger because of the braided hair and because of the being obscured behind the seat, the DNA, the length of the gun, the difficult how crowded it was in the back to have been able to be shooting it from the back seat. Why isn't that enough for a jury to say, you know, it's Johnson in the front passenger seat? It's not your honor, because the evidence was basically and there's there's a lot of power when someone is indicted for something. But the evidence was not beyond a reasonable doubt. Like I said, it was a coin flip and the jury flipped the coin and decided that it was Johnson metaphorically flip the coin. May I reserve the rest of my. Yes, you may. All right. Thank you very much. Thank you. We'll hear now from Mr. Boyd. Good morning, your honors, and may it please the court. My name is William Boyd. I'm an USA from here in Phoenix on behalf of the United States. As Judge Campbell correctly concluded, there was substantial evidence that Johnson was the person who shot the assault rifle at Hopi police officers doing this police chase. The jury actually returned a special verdict form specifically identifying him as the person who discharged the rifle. And substantial evidence supports that conclusion. I would say there's four categories of evidence to try to marshal them all. First is the eyewitness testimony, which the court has discussed. Officer Davis testified the shooter was in the front seat on the ER 220 and 221 repeatedly. I also think that is uniquely probative evidence in light of the defendant's jail call in which he admitted the officer was close enough to see him and to see where he was sitting on the ER 754. I will sanitize it because even the cop row, he got close enough to see me where I was sitting in the ride. So that alone, coupled with the defendant's admission on his jail calls that he was in the front seat, is enough to establish that he was the shooter. But of course, there's much more. Officer Davis testified that the shooter had braids that looked like bumps. The jury was given the arrest photographs of all three of the subjects who were in the car. We provided them at SCR 41 through 43. There's only one person's hairstyle that matches that. The jury could certainly rely on that. Also, I think probative and particularly to reject the defense reconstructionist evidence is the fact that both officers as well as a third party witness testified that there were gunshots before the back window shattered out. And given the physical characteristics of the firearm, that could not be the case if the vehicle showed that the back seat was 28 inches deep. This firearm, as noted, was depending on how far the backstop was out, 32 to 36 inches. And of course, there has to be a person behind it. So that's another foot of human being behind it, which is somewhere now in the 40 plus inches of space that wouldn't fit into a 28 inch seat. Both Officer Palmescima at ER 136 and Officer Davis at 215 to 216 testified that there were shots before the back screen, the back windshield shattered out. And bystander Truman Navokuku on ER 268 testified that he saw the back windshield was shattered after he heard the muffled gunshots. So based on that, in concert with the physical evidence about the length of the rifle, the jury certainly could have concluded that it had to be the front passenger who was the shooter. There's other physical evidence, too. The magazine was found on the seat or on the floorboard in the front passenger seat. Unspinned cartridges were found in the front of the vehicle, in the front console, and on the front floor. And the back seat, as the jury saw from photographs, was cluttered, filled with junk. It would be very difficult for anyone to shoot from there. And briefly, additionally, the DNA evidence. It was noted that sometimes male DNA can displace female DNA. The jury also heard testimony that all three people's DNA was on a bottle. And so having one piece of evidence where all three people's DNA is on it, but the rifle grip only has the two defendants, the jury can draw a rational conclusion from that. And lastly, is the consciousness of guilt evidence. Johnson fled the scene. He actually fled first, according to the bystander, Truman Navokuku, who saw him flee. And it was only 10 minutes later that the subjects fled. And he fled in a different direction from the rifle. And then lastly, he lied repeatedly to the police when he was apprehended. He lied about his name, his date of birth. He told Officer Harris he wasn't aware of any incident that was going on. He lied about the kind of car he'd been in. He said it was a Ford car, not a GMC truck. And then he told this false story to both Garland Navokuku and Officer Harris about having been at a party and being kicked out of a car. Counsel, can you address the juror issue? Yes, Your Honor. So Judge Campbell did not abuse his discretion in any way, and his factual findings were not clear error in denying these post-trial motions. With respect to the motion for a mistrial based on the juror supposedly feeling uncomfortable with sentencing, I would note first all parties signed off on Judge Campbell's response. When the note came in, the parties were brought back in. It was actually Johnson's counsel who suggested, why don't we also add a reference again to Instruction 26? All three parties approved that response. As Judge Mendoza noted during my colleague's argument, this is something that happens every day in trial. There was no request by defense counsel at the time that, you know, the note came that, oh, my goodness, we have a juror discussing sentencing that juror should be removed from the jury, and the request for that. Is that correct? That is correct, Your Honor, and there was never actually a request to remove the juror ever. The note came in, the parties discussed an answer, all parties agreed on it, it went back, and then later on they filed a motion for a mistrial. So it's hard to see how Judge Campbell could be held to have abused his discretion when he was doing what all of the parties said they were fine with him doing. I think, sort of under the legal analysis, question one is, does this note show juror misconduct? And question two is, does the defendant establish prejudice? He has to meet both of those. I don't think he meets either. The note does not disclose that any juror was actually holding out. I think you could probably draw contrary conclusions from this note, but the concern of the case law that the parties discuss that requires a mistrial is when you have a juror disclosing what the vote count is, who the identity of the holdout is, and that juror knows the court knows, and that's what creates the problem, because when the judge gives an Allen charge, that juror sort of interprets that as, well, I should change my vote. What about counsel's point that the follow-up call by the juror about feeling pressured with regards to the time? So a couple of responses to that, Your Honor. The first is, it is categorically rule 606B, as the Lund case says, that rule is a broad prophylactic for any use of that. Also, the court has the Marquez case that's cited in the answering brief, which is directly on point. In the Marquez case, the jury had actually been held to 11 o'clock on a Friday and to 10 o'clock on a Monday, and then received a juror affidavit afterwards, in which a juror said, we compromised our verdict because we didn't want to keep coming back. This court said that was within the judge's discretion to hold them that late. We're not anywhere close to that here, and that it was categorically barred by rule 606B. So under the Marquez case, I don't think that the court could even consider it. Lastly, and I don't wish to sort of try to analyze it too much, but I think that call actually hurts the defendant's argument. Judge Campbell summarized it at ER 7-8, and he said that the juror said they made a quick decision because the jurors wished to go home to northern on Monday, which says to me the jury was aware that they absolutely could return on Monday. As Judge Desai pointed out, Judge Campbell himself told the jury that they might be back on Monday in charging them and releasing the alternates. And I would also point out at ER 21, Judge Campbell made a factual findings that the jurors, quote, clearly understood that Monday deliberations were possible based on his colloquy. I think that is entitled to the highest level of clear error and it isn't clear error. Fundamentally, jurors are presumed to follow their instructions, and a whole host of instructions told them decide the case based on the evidence, not based on anything I say. That's instruction number one, as well as to decide do not change an honest belief about the weight and effect of the evidence simply to reach a verdict. That's instruction 23. There's no reason to believe the jurors disregarded any of those instructions. Judge Campbell was well within his reasoned discretion and he did what judges do every day. They provide an estimate and he always spoke in terms of what he expected or what he predicted. He never even put it in the second person. He was always about himself or what the parties were doing. And if judges can't do that, they're in trouble because jurors need to be able to organize their lives. He didn't. I mean, the comment that they challenged was not in terms of himself. It was I think the jury will complete today and be finished. And I would say that's the judge providing his expectation, I think, which is something that he's not saying you must or you will. He's giving his prediction of what he thinks the trial schedule will be, which I think judges have to be able to do. But this is a comment that's made after closing arguments. Yes, it is, Your Honor. So this and this is on Friday afternoon. So this is a suggestion that, I mean, it kind of communicates to the judge saying this is an easy case. I don't think I read that in, Your Honor. Certainly not in light of the judge's other comments, which, again, repeatedly informed the jury that they could be back. In fact, he told the alternates who were released in front of the whole jury panel, don't talk to anyone because you might be back on Monday. And in light of all of the general instructions that he provided, I don't think a jury would read into that, that there was that they had to conclude the case that day. And I think that the jury's call, noting that they didn't want to come back on Monday, shows which, again, you can't consider under 606B, but even if you could, it shows they knew that they could come back on Monday. And one jury may not have wanted to, but there's no evidence anyone changed their verdict because of it. In the absence of any further questions from the court, the United States would respectfully ask the court to affirm the judgment. All right. Thank you, counsel. We'll hear rebuttal. Are there any further questions? If there's not, I was going to rest. All right. All right. Thank you, counsel. Thank you very much. Case just argued will be submitted.
judges: COLLINS, MENDOZA, DESAI